Gulf, Colorado & Santa Fe Railway Company et al. v. House & Watkins.

Decided June 14, 1905.

**1.—Cattle Shipment—Bad Handling—Pleading and Evidence.**

Where there was no allegation of injuries to the cattle from bad handling during the shipment, it was no ground for a new trial that the verdict, for plaintiff, was against the evidence in that there was no evidence of bad handling in transit.

**2.—Same—Shrinkage—Proof of Damage.**

Direct evidence of the shrinkage of the cattle caused by the delay in their transportation together with testimony of experts based on hypothetical questions embracing the facts proven, was sufficient to show that the cattle were injured by the negligence of the defendant.

**3.—Same—Contracts of Shipment—Oral and Written—Breach of Oral.**

The carrier's breach of an oral contract to furnish cars at a given time created a liability which could not be avoided by a written contract of shipment afterwards made unless there was a consideration inuring to the shipper as compensation for the damages from such breach, when the contract was signed.

**4.—Same—Shrinkage—Difference of Value—Expert Testimony.**

Where a witness testified that cattle would shrink from 50 to 60 pounds per head every 24 hours during transportation, he could, as an expert, testify as to what the difference in value per hundred weight would be on that account.

**5.—Same—Evidence of Negligent Delay.**

It was not error to permit plaintiff to prove, his cattle having been kept over by the carrier at a certain point for an entire day, that freight trains passed such point during that day going in the direction of the cattle's destination. As to whether such trains could have carried the cattle was a matter peculiarly within the knowledge of the carrier.

**6.—Same—Failure to Furnish Cars.**

The testimony of a witness that when he first ordered the cars for plaintiff from the carrier's agent at V., such agent informed him that he could get the cars through the agent at G., was admissible to show that the carrier had contracted with plaintiff through the proper agent to furnish the cars.

**7.—Same—Failure to Feed and Water.**

Where plaintiff placed his cattle in the pens for shipment when he knew there were no cars there for them, and allowed them to remain in the pens without feeding and watering them because relying on the representations of the carrier's agent that the cars would soon be there, the carrier was liable for the resultant injury to the cattle.

Appeal from the County Court of Cooke. Tried below before Hon. J. M. Wright.

*J. W. Terry* and *A. H. Culwell,* for appellants.

*Potter & Potter,* for appellees.—If plaintiffs placed their cattle in the pens for shipment at a time when they knew there were no cars there in which to ship them, and permitted them to remain in the pens and await the arrival of the cars without taking them to feed and water on account of their reliance upon the defendants' representations through its agent at Valley View that the cars would be there soon, defendants would be liable. Easton v. Dudley, 78 Texas, 238; McCarty v. Gulf, C. & S. F. Ry. Co., 79 Texas, 35; Railway v. McCorquedale, 71 Texas, 46; 87 Texas, 219.

NEILL, ASSOCIATE JUSTICE.—Appellees, House & Watkins, sued appellants, the Gulf, Colorado & Santa Fe and the Atchison, Topeka & Santa Fe Railway Companies, in the County Court for $350 damages to a shipment of two carloads of cattle shipped by plaintiffs over defendants' lines of railway from Valley View, Texas, to Kansas City, Mo., in August, 1902.

Plaintiffs charged in their petition that they made a contract with defendants' agent at Gainesville, by the terms of which defendants agreed to have two cars placed at Valley View on the 16th day of August, 1902, for the shipment of fifty-six head of cattle to Kansas City, Missouri; that the cars failed to arrive at the appointed time, and that the cattle, on account of plaintiffs being induced to believe by the representations of defendants' agent that the cars were expected to arrive immediately, remained in the pens at Valley View for about sixteen hours without food or water; and that after they were loaded on the cars they were unreasonably and negligently delayed in transit, so that they were greatly reduced in flesh and in market value on their arrival at destination. That had defendants promptly received and transported the cattle with reasonable dispatch, they would have arrived in Kansas City in time to have been sold on the market of August 18, the day they were intended for sale. But that they did not, by reason of defendants' negligence, reach there until August 20, and that the market price of the class of cattle such as plaintiffs' had depreciated 15 cents per hundred, which was lost to plaintiffs, etc.

The defendants answered by general and special exceptions, a general denial, and plead specially that the cattle were shipped under a written contract signed by the respective agents of plaintiffs and defendants at Valley View; that by the terms of such contract it was stipulated that the cattle should not be transported within any specified time, nor delivered at any particular hour, nor for any particular market, and that all prior understandings and agreements concerning the transportation of the cattle were to be considered as merged in said written contract; that if the cattle suffered in the pens at Valley View, it was caused by the negligence of plaintiffs in not properly feeding, watering and caring for them, and that defendants were not responsible for anything that happened to the cattle prior to the time of the execution of the written contract; that if the cattle were injured en route, it was caused by plaintiffs' improperly loading them, etc.

The case was tried before a jury and resulted in a verdict and judgment in favor of plaintiffs for the sum of $125.

*Conclusions of Fact.*—The evidence is reasonably sufficient to prove the negligence averred by plaintiffs, and that in consequence of it they were damaged in the amount found by the jury.

*Conclusions of Law.*—1. There was no allegation of injuries to the cattle from bad handling by defendants while in transit to Kansas City. Therefore there was no such issue in the case, and it could not have been error in the court to refuse a new trial upon the ground that the verdict was contrary to the law and against the evidence because there was no evidence of bad handling of the cattle while in transit.

2. The plaintiffs did not base their cause of action on the failure of defendants to water and feed the cattle while at Valley View, after being requested to do so by plaintiffs; but, partly upon the failure of the cattle to get food and water while there by reason of defendants' agent continually representing to plaintiffs that the train would arrive and take the cattle off in a very short time, thereby inducing plaintiffs to believe all along that the cattle would be shipped before they would need food and water, or before plaintiffs would have time to water them. Therefore we overrule the second assignment of error.

3. The appellants' assignment of error that the verdict is contrary to the law and against the manifest weight of the evidence, in that it fails to show plaintiffs' cattle were injured by the negligence of defendants, the whole case being decided on the admission of hypothetical evidence of shrinkage of cattle, can not be sustained. There was direct evidence of the shrinkage of the cattle occasioned by the long delay in transporting them to their destination, besides the testimony of experts based upon hypothetical questions, which embraced facts proven in this particular case.

4. The oral contract of appellants to furnish the cars at Valley View at a specified time was breached and the damages ensued by reason thereof before the written contract was signed. Therefore, appellants' liability for the breach of such contract could not be avoided by the written contract of shipment afterwards made, unless there was a consideration inuring to plaintiffs, as compensation for such damages, when such contract was signed. And the evidence entirely negatives the idea that any such consideration was contemplated by appellants, or induced plaintiffs to execute the written contract. On the contrary, it shows that plaintiffs were compelled to sign the contract for the purpose of getting their cattle shipped.

5. The same facts which the witness Tamblyn testified to in his answer to the eighteenth direct interrogatory, the admission of which in evidence was objected to by appellant, was testified to by the same witness, and others, without objection. If, therefore, it should be conceded that the court erred in allowing the answer to be read in evidence over the objections, such error was harmless.

6. The sixth assignment of error is analogous to the one just disposed of, the same proposition being advanced under it. It having been shown by the testimony of the witness Raisor that cattle such as

plaintiffs' would shrink from fifty to sixty pounds per head every twenty-four hours during the time they were handled in transportation by rail, the witness could, as an expert, testify as to what the difference in value per hundred weight of the cattle would be on that account. To illustrate, suppose two steers of the same kind, shipped from the same place over the same road, one twenty-four hours before the other, arrive at the same place of market at the same time and are then of the same weight. The one shipped first, though he may have been properly handled, has suffered twenty-four hours longer than the other, besides the loss in weight from shrinkage during that time; he is drawn and gaunt and, in consequence, is classed on the market, though he weighs as much, lower than the other, which has been transported without delay and has arrived at market in good condition. Can it not be shown by an expert that there is a difference in their value, what the difference is and the cause of it? If there is a difference in value, and it is caused by the negligent delay of the carrier, and if the shipper is not allowed to prove it, then he has, by the negligence of the carrier lost this difference, and has no redress for the wrong done him. The trial court simply held that he could make such proof and admitted the testimony complained of in this assignment for that purpose.

7. The evidence shows that the cattle arrived at Arkansas City at 4 o'clock, p. m., on Sunday, were unloaded and fed, remained there until about that time next day. In connection with these facts the witness, J. S. Froak, was asked by plaintiffs' counsel this question: "Do you know whether or not any trains passed through Arkansas City going north, freight trains, stock trains, during that time?"

To which defendants' counsel objected on the ground that there was no evidence that defendant could have carried plaintiffs' cattle on such trains, or where the destination of said trains was. The objection was overruled by the court and the witness was permitted to answer before the jury as follows: "I don't know how many trains there were; I think there were probably two trains. I saw two freight trains." To the ruling of the court allowing the question asked, the appellants excepted; and upon the bill of exceptions the seventh assignment of error is predicated. It will be noted that the objection only went to the question, and not to the relevancy of the testimony elicited by it. It seems to us that if appellants deemed the testimony prejudicial they should have also requested the court to exclude it from the consideration of the jury. We are not informed of the purpose of the testimony. It may have been for the purpose of showing that the condition of appellants' road was such that trains could be operated over it towards Kansas City, Mo., or it may have been for the purpose of showing that trains were operated over appellants' road on Sunday. If either of these were the purpose, it seems to us that the question and answer to it were proper, as tending to show that appellants could not excuse themselves for the delay in holding appellants' cattle so long at Arkansas City, upon either of the grounds which such testimony tends to show did not exist. If the question was asked for the purpose of showing that trains passed going north to Kansas City to which the cars in which plaintiffs' cattle were loaded could have been attached and carried there, it would also be legitimate, for the desired answer would tend to show that there

was no reason for appellants delaying the cattle so long at Arkansas City. The answer, however, does not of itself show such fact as may have been intended by plaintiffs to be elicited by the question. It may be, though, that the two freight trains the witness saw pass going north were destined for Kansas City and were such as that the cars containing plaintiffs' cattle could not have been attached to them and carried to their destination. As to whether they could, was a matter peculiarly within the knowledge of appellants, and upon cross examination they could have shown, if it .was a fact, that the cars could not have been coupled onto either of the trains and carried to Kansas City more expeditiously then they were. We think what we have said demonstrates that the objection to the question may have been properly overruled by the court, and we must indulge the presumption that the ruling of the court upon it was correct.

8. What we have said in disposing of other assignments of error also disposes of the eighth adversely to appellants.

9. The testimony of the witness, Mount Dillon, the admission of which, over appellants' objections, is made the subject of this assignment of error, was, in view of the fact that he testified that he first ordered cars at Valley View from the agent there for the shipment of the cattle, and that the agent then informed him he could get the cars through the agent, Mr. Gates, at Gainesville, was admissible as evidence against appellants to show that they had contracted with appellees through their proper agent to furnish him the cars for the shipment at the time and place agreed upon.

10. The court did not err in those paragraphs of its charge pointed out by the tenth and twelfth assignments of error. (Easton v. Dudley, 78 Texas, 238; McCarthy v. Gulf, C. & S. F. Ry. Co., 79 Texas, 35.)

11. The paragraph of the charge complained of in the eleventh and thirteenth assignments of error by which the jury were charged substantially that if the appellees had placed their cattle in the pens for shipment, and if at a time they knew there were no cars there in which to ship them, and they permitted their cattle to remain in the pens and await the arrival of the cars without taking them to feed and water on account of the reliance upon the defendants representations through its agent at Valley View that the cars would be there soon; and if on that account the cattle suffered injury, defendants would be liable, is not subject to the objection urged to it. It simply submitted to the finding of the jury certain matters which, if established by the evidence, would render appellants liable. (Easton v. Dudley, 78 Texas, 238.)

12. The fourteenth, fifteenth, sixteenth, seventeenth and eighteenth assignments of error are directed against the charge of the court. In considering them we have concluded that none is well taken and that the charge of the court fully and fairly presents the law upon the issues involved in the case. We also overrule the remaining assignments of error which complain of the court's refusal to give certain special charges requested by appellants.

There is no error assigned which requires a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*