**GULF OIL CORPORATION, Appellant,**

**v.**

**SPENCE & HOWE CONSTRUCTION COMPANY, Appellee.**

No. 13895.

Court of Civil Appeals of Texas. Houston.

March 29, 1962.

Rehearing Denied April 26, 1962.

Finis Cowan, Houston, Baker, Botts, Andrews & Shepherd, Houston, of counsel, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Newton Gresham, Larry W. Starr, Houston, for appellee.

BELL, Chief Justice.

An employee of appellee was injured by the negligent acts of an employee of appellant while working on a job that appellee was performing for appellant at appellant's refinery at Port Arthur, Texas. Appellee's employee, Mr. Cummings, sued appellant for damages resulting to him. Appellant reached a settlement of the claim and the amount agreed upon was paid. Appellant in this case sued appellee, claiming that under the contract between them appellee had agreed to indemnify appellant against all liability to anyone who was injured in connection with the work to be performed by appellee under the contract, the indemnity being even against liability created by the negligent acts of appellant's employees.

In a trial before a jury, the jury exonerated appellee of any negligence; found appellant's agent's acts to be solely the cause of Cummings' injuries, and found the settlement made by appellant was reasonable and was made in good faith. The court, however, rendered judgment in favor of appellee. Apparently the basis of the court's judgment is that the injury occurred at a time when there was an oral contract in effect which encompassed no indemnity agreement, or that the indemnity provision of the written contract, executed subsequent to the injury, did not cover the injury caused solely by appellant's employee.

The position of the appellant is that all of the work performed by appellee was performed under the terms of the written contract which contained an indemnity provision indemnifying it against all liability for any injury received by anyone in connection with the work to be performed under the contract, including indemnity against liability for acts of appellant's own employees.

. The position of appellee is that at the time of the injury to Mr. Cummings work was being performed under an oral contract containing no indemnity agreement. Further it contends the written contract on which appellant relies does not indemnify appellant against the acts of its own agents.

The evidence shows that the work of driving piling for six propane tanks was commenced by appellee on October 26, 1954. This work was commenced at the oral direction of appellant. Mr. Cummings was

injured October 29. A written purchase order, which all parties treat as the written contract, was executed by appellant November 3 and by appellee on November 4. The written contract contained the indemnity agreement which we will notice specifically later in this opinion. It also contained this provision: "By oral agreement work under this order commenced on October 26, 1954."

Practically all of the testimony dealing with the negotiations for the contract came from Mr. Hartzog, President of appellee. He did not remember what representative of appellant he talked to but he said it was probably Mr. Marble. Neither could he remember just when negotiations began. He stated it could have been a day or so or a week before October 26. He further stated he could not state precisely how the negotiations commenced but assumed they proceeded as in the previous contracts between the parties for like work. It appeared from other evidence that there had been some 54 contracts involving driving of piling for appellant by appellee between 1951 and October, 1954. The negotiations would, as did this contract, commence by a telephone call from appellant asking appellee for a bid. Appellee would then quote a price. Then, as in this case, appellee would confirm the oral bid by letter. In this case apparently the bid as to prices was accepted orally over the telephone and appellee was told to confirm the bid by letter. This was done by letter, dated October 27. The letter was addressed to appellant and then stated: "We propose to furnish labor, supervision, etc., to drive piling for 6 propane tanks at the following schedule of prices: * * *." Then follows a listing of hourly charges for various types of work. One item listed reads: "Insurance and assessment at cost." The evidence given by Mr. Hartzog shows he assumed that the work would be done pursuant to a purchase order similar to the ones that had been issued on prior jobs. He knew it would contain a form of indemnity similar to that on the previous jobs. He knew that appellee must furnish appellant with insurance containing contractual coverage endorsement.

On all previous jobs the work had been done under a written purchase order. In a few instances work had commenced by oral direction of appellant and the purchase order subsequently issued. The purchase orders, except the last one signed immediately before the one here involved, contained an indemnity agreement expressly excluding any liability by appellee for the acts of appellant. The one here involved and the one immediately preceding it were worded the same and did not expressly exclude liability of appellee for the negligent acts of appellant. Appellee, however, did not actually know of any change in wording though it executed this and the previous purchase order. In his testimony Mr. Hartzog testified the purchase order expressed the entire agreement between appellee and appellant.

We are of the view there was only one contract and it was the written purchase order and it covered all work done by appellee in the driving of piling for 6 propane tanks.

The rule with regard to whether oral exchanges between an offeror and offeree form a contract between the parties, or, whether a written agreement covering the same subject subsequently executed constitutes the contract so that all previous oral representations are merged into the written instrument, is a matter of the intention of the parties. If by oral exchange all of the terms of the contract have been agreed upon and the parties intend to reduce the agreement to writing only so the writing is intended as a memorandum of the completed contract, there is no merger. If, however, the parties intend there shall be no contract formed by the oral exchange, but intend that the written instrument subsequently executed shall be the contract, there is a merger of the prior and contemporaneous exchanges and the written instrument becomes the contract. If all of the terms of a proposed contract are not orally agreed upon but there is a subsequent writing in which all the terms are agreed upon, the writing becomes the contract and that which

preceded it was merely a part of the negotiations leading to the contract. Friedman et al. v. Schleuter et al., 105 Ark. 580, 151 S.W. 696.

The difficulty is not so much as to what the rule of law is as is its application.

Here we think the parties themselves by their acts and the words of their written agreement show, as a matter of law, the intention to make the written purchase order dated November 3, 1954, applicable to all work done. The evidence shows a prior course of dealing between the parties involving the same type of work and in each instance the work was performed under a written purchase order issued by appellant. In some previous instances verbal direction was given to start the work prior to the execution of the written order, but in each such instance the written order followed. Mr. Hartzog testified he knew a purchase order similar to those previously executed would be executed. All of the terms of this particular contract had not been agreed upon until the written order was signed. Further evidencing the intention to make the written order the contract covering all work is the fact that the order number assigned the written purchase order appears on the billing for work done during the month of October. Too, the "proposal" contained in the letter of October 27 aids us. It is termed a "proposal" and shows the contract in all its terms had not been fully agreed upon because it contained an item of cost stating "Insurance and assessments at cost". What insurance is meant is not shown. What assessments are intended are not shown. We feel that all of these undisputed facts point to merely a period of negotiations. If we had no more than this there would probably be a fact issue to be determined by the jury, and, no jury answer having been obtained by appellant, we would be required to presume it was found by the court in a manner so as to support the judgment favorable to appellee. We, however, deem of controlling importance what the parties in the writing have themselves said. The purchase order says: "By oral agreement work under this

order commenced on October 26, 1954." This language stands unchallenged and unexplained in the testimony. We think it can only mean that all work was performed and was to be performed under the terms of the purchase order. If the parties intended that the work already done was under a separate oral agreement, there would have been no need to even make reference to it.

■ We are not unaware that the effect of this holding is to make the contract retroactive. We see no reason why a contract may not be made retroactive where the parties choose to do so. No case has been cited us that is precisely in point. The nearest we have found is that of Cable v. Foley et al., 45 Minn. 421, 47 N.W. 1135, by the Supreme Court of Minnesota. The full facts do not appear in the opinion. It does appear, however, that there a contract calling for certain work was reduced to writing a few days after part of the work had been done. The written contract, however, was dated back so as to be prior in point of time to all of the work. The question arose as to whether the terms of the written contract were applicable to the work done before the execution of the written contract. The court said there would be no doubt that the terms of the written contract governed all the work included in the instrument had it not been shown that part of the work was done before the execution of the writing. The court held the fact that part of the work had previously been done was not conclusive and said:

"That, however, is not conclusive that the entire work was not intended to come within the terms of the written contracts; for it is competent for parties, when a parol contract has been in part performed to reduce the contract to writing; and when they do so the prior parol contract is merged in it, and the writing becomes the sole expositor of the terms agreed on. Blondel v. Le Vesconte, 41 Minn. 35, 42 N.W.Rep. 544. The contracts provide for work to be done in the future. But they are dated back from the time of their execu-

tion, so that the dates are prior to the doing of the work; and the work done was done in the future in respect to the dates. The date of a contract is not always material, but it may be made so by the terms of the contract, an instance of which is where there is a promise to pay or to do an act within a specified time after the date. In the case of these contracts, we think the dates are material, as showing what work—to-wit, that done after the dates—was intended to be covered by their terms. And, so far as the extrinsic evidence bears on the point, (supposing it to be a case for extrinsic evidence as to which no question is raised,) it tends to show that the contracts were intended to have effect as of their dates, and not as of the times of actual execution; for it is to be fairly inferred from the testimony of the plaintiff that it was the understanding that there should be a written contract to cover all plaintiff was employed to do. We conclude, then, that the terms of the contracts were to control the rights of the parties growing out of the employment, as well what is alleged in the sixth cause of action as the other. The parol evidence offered to show that it was not intended the contracts should take effect and be binding would expressly contradict their terms, and was therefore not admissible."

In our case the writing was not back dated but the effect of the provision of the writing itself is to show it was to govern all the work of driving the piling, particularly the language "By oral agreement work under this order commenced October 26, 1954."

The above holding is supported by dictum in Granger v. Kishi, Tex.Civ.App., 153 S.W. 1161, and Gulf, C. & S. F. Ry. v. House & Watkins, 40 Tex.Civ.App., 105, 88 S.W. 1110, and Courreges v. System Freight Service, 152 S.W.2d 841 (CCA).

 Appellee takes the position there is no merger where partial performance has taken place. In each case cited there is such a statement but such statement was unnecessary to the decision. In all but one of them there had really been complete performance by one of the parties of an oral contract which placed an obligation on the part of the other to perform, so there was no binding written agreement, though a writing was subsequently executed, when the writing purported to obligate the party to do what he was already obligated to do. There was no consideration for the alleged written agreement and therefore no written contract.

In McCann v. Central Forwarding, Tex. Civ.App., 211 S.W.2d 794, McCann was contending his purchase order controlled over an oral agreement for hauling of freight though it was issued after the freight had been loaded but before it was shipped. However, it was held not controlling because McCann's agent at Corpus Christi had independent negotiations with and entered into an oral contract with appellee and McCann testified if the agent did this he owed for all the freight charges. McCann himself had not participated in the negotiations between his agent and the plaintiff in the case.

 Appellee contends also that the indemnity agreement is not binding on it because it did not know this particular form of indemnity was in the purchase order and it should have specifically been called to his attention. There is no suggestion of any fraud, overreaching of any kind or mutual mistake. In the absence of such, parties are bound by the provisions of the writing. They are charged with knowledge of what they can know by reading the instrument.

Appellee cites the case of Halliburton Oil Well Cementing Company v. Millican, 5 Cir., 171 F.2d 426, as supporting its position in this regard. We think it does. We most respectfully disagree with the very learned judge who wrote the opinion. We know of no sound reason why such should be an exception to the well established rule, that parties to a written contract are bound by all its provisions in the absence of fraud, accident or mistake.

The next question is whether the indemnity provision encompasses liability under the particular facts of this case.

The contract provides that appellant shall furnish the equipment for driving the piling. It furnished the pile driving equipment and its own employee to operate it. It paid its employee. However, the operator of the pile driving equipment was to take directions from appellee in performance of the work of driving the piling. In this particular case Mr. Cummings was up on the leads, a part of the pile driving machine, engaged in performing work covered by the contract. A leadman, an employee of appellee, had signaled the operator to raise piling immediately before the accident. The negligence as found by the jury, however, did not consist of any act done by appellee's employees. The negligence that was found to be the proximate cause of the injury was the failure of Gulf's employee to keep a proper lookout for the safety of Mr. Cummings. In answer to Special Issue No. 18, the jury found the injury to Cummings resulted solely from the use of equipment furnished by Gulf. In answer to Special Issue No. 19, it found the injuries were solely caused by the negligence of Gulf.

Appellee says the indemnity agreement does not cover the injury received by Cummings because is was not caused by any act of appellee or its failure to act and it did not arise "in connection with" work to be done by *appellee* under the contract.

The written purchase order signed by both appellant and appellee, which we have held covered all work done and to be done, is addressed to appellee. The order first provides in substance that appellee shall furnish labor and *supervision* and drive piling for six propane tanks as per appellee's proposal of October 27, 1954. The proposal shows appellant was to furnish unnamed equipment, but all parties agree it was to furnish the pile driving equipment and its operator. Then follows this provision that has been "typed" on a typewriter: "In the performance of this contract you agree to assume responsibility for doing or failing to do anything that may result in death of or bodily injury to any person and loss of or damage to any property."

Appellee would have us read the word "your" before the word "doing" and the word "failing".

The above indemnity provision is typed on a printed form used by appellant generally for purchases of goods or services it makes, and paragraph 13 of the form contains this printed indemnity provision:

"In case of entry by Seller * * * upon premises of purchaser, for the purpose of construction, erection, inspection or delivery * * * Seller agrees to provide all necessary sufficient safeguards and to take all proper precautions against occurrence of accidents, injuries or damages to any person or property, and to be responsible for and to indemnify and save harmless the purchaser from all loss or damage and any and all claims arising by reason of accidents, injuries or damage to any persons or property in connection with such work, * * * and further agrees to defend at Seller's expense, any and all suits or actions, civil or criminal, arising out of such claims or' matters * * *"

We have reached the conclusion that the effect of both indemnity provisions, construed together in the light of the surrounding circumstances and the nature of the work undertaken by appellee, makes appellee liable to reimburse appellant for what it paid Mr. Cummings and the reasonable expenses incurred in that connection.

In construing contracts we must seek the intention of the parties from the language used in the contract. All of the language used is to be considered. Too, consideration may be given to the subject matter of the contract and the surrounding facts and circumstances, not for the purposes of varying or adding to the contract

but in order to find out the intention with which words are used.

■ Appellee does not contend that the indemnity agreement must expressly indemnify against the indemnitee's own negligence. He only contends assumption of liability for the indemnitee's acts must be fairly said to come within the language used by the parties. We agree with appellee's statement of applicable law. Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775. Our disagreement is in the application of the law to the facts before us.

■ We will first discuss the contention that the injury was not received in connection with the work contracted to be done by appellee. The basis of this assertion is that under the contract appellant was to furnish the pile driving machine and its operator and that the sole cause of the injury to Mr. Cummings was the negligence of the operator in operating the machine. Actually, the contractual undertaking of appellee was not only to furnish, except for the operator, labor for the driving of piling for six propane tanks, but appellee was to *supervise* the entire job which necessarily included supervision over appellant's machine operator while he was engaged in carrying out his functions in performance of necessary acts in driving piling. Under the facts of this case, the act of the operator which caused the injury was one necessary to be done in driving of the piling. He was lifting the piling in the leads which was an act in a series of acts in driving the piling. He was lifting the piling in response to a signal from appellee's employee. It was in the execution of the act called for by the signal that constituted the negligence that caused Mr. Cummings' injury, that is, the operator failed to keep a proper lookout for Mr. Cummings' safety. We do not mean to imply any negligence on the part of appellee's employee in giving the signal. Certainly, however, the operator's act was one necessary in driving the piling and it was appellee's obligation to supervise the whole job and see that the piling was driven. We, therefore, conclude the injury resulted from an act done in connection with the work to be done by appellee within the meaning of the indemnity provision of the contract. See Chrysler Motors of California v. Royal Indemnity Co., 76 Cal.App.2d 785, 174 P.2d 318.

We also conclude that the indemnity provisions of the contract encompass the negligent act of the machine operator, which act was performed in connection with the work appellee contracted to do.

■ We see no inconsistency between the typewritten indemnity provision and the printed one. There is no question in our minds that the printed provision covers responsibility by way of indemnity. Appellee does not seem to seriously question this. However, it contends that the printed indemnity, when construed with the typewritten provision, limits its responsibility to its own acts of negligence. The typewritten portion states that appellee in the performance of the contract "assumes responsibility" for doing or failing to do anything that may result in death of or injury to any person or damage to any property. Without any such provision appellee would be responsible for its own acts which resulted in loss to anyone. There is no need for such a provision in the contract. "To assume" means to adopt, receive or take up, to become bound as another is bound, or to put one's self in the place of another as to an obligation or liability. Texas Employers' Ins. Ass'n v. Texas & P. Railway Co., Tex.Civ.App., 129 S.W.2d 746 writ dism., cor. judg.; New York Central R. R. Co. v. General Motors Corp., D.C., 182 F.Supp. 273. It means to take on an obligation that would not be the obligor's except for the agreement to take it on.

Let us look at the circumstances in which the words were used. Appellant was to furnish an operator who was to assist appellee in driving the piling *but* (and this is of particular import), *under the supervision of*

*appellee.* Certainly ordinary persons would recognize the situation was fraught with the danger that the employees, either the operator, or appellee's employees, or both, might be guilty of negligence causing injury and that appellant would thus be in danger of being subjected to liability though its operator was under the supervision of appellee. It might be very difficult to factually determine whether appellant's employee's negligent act was wholly independent of any negligence of appellee, or whether the negligence of appellant's operator and an employee of appellee would concur in causing the injury. The parties wanted to put at rest once and for all any question of ultimate responsibility for an act performed by anyone in connection with the driving of the piling. It is just in such a situation that you would expect an indemnity certainly to the extent of protecting appellant against liability for the negligence of its operator in carrying out directions of appellee in performance of the obligation to supervise the driving of the piling. See Jacksonville Terminal Co. v. Railway Express Agency, Inc., 296 F.2d 256, note at p. 263, (5th Ct. of App.; St. Louis & S. Ry. Co. v. Stewart et al., 187 S.W. 836 (Mo.); Northern Texas Traction Co. v. City of Polytechnic, 236 S.W. 73 (Tex.Com.App.).

Certainly the typewritten portion did not use the word "your" before the words "doing" or "failing to do". Only general language was used and this in connection with the words "you agree to assume responsibility for".

We think the contract in the light of all surrounding circumstances and the language used means that the indemnitor would indemnify the indemnitee for the act of indemnitee's operator performed in connection with the driving of the piling which indemnitor contracted to supervise and was supervising at the time of the injury.

We have not discussed and cited the Texas cases involving indemnities, other than as above, because we do not consider them helpful on the situation before us, other than as above stated.

The judgment of the trial court is reversed and judgment is here rendered for appellant.