SPENCE & HOWE CONSTRUCTION COMPANY, Petitioner,

v.

GULF OIL CORPORATION, Respondent.

No. A–9045.

Supreme Court of Texas.

March 6, 1963.

Fulbright, Crooker, Freeman, Bates & Jaworski, Newton Gresham and Larry W. Starr, of above firm, Houston, for petitioner.

Baker, Botts, Andrews & Shepherd, Finis E. Cowan, and William Harvin, with above firm, Houston, for respondent.

NORVELL, Justice.

This Court granted writ of error upon petitioner's point which asserted that:

"The Court of Civil Appeals erred in holding that the written contract sued upon provided indemnity to Respondent for an accident which the jury found upon sufficient evidence was solely caused by Respondent's own negligence and by equipment furnished by Respondent."

We are in agreement with the Court of Civil Appeals that liability herein is controlled by a written agreement designated as a "purchase order" which bears date of November 3, 1954. The accident which gave rise to this litigation occurred on October 29, but the written memorandum of agreement—the "purchase order" recites that the work commenced on October 26 and it appears that the form of "purchase order" employed was identical in form with the last previous contract between the parties relating to a similar piece of work. We need not add to the discussion of this matter which is contained in the opinion of the Court of Civil Appeals. See, Gulf Oil Corporation v. Spence & Howe Construction Co., Tex.Civ.App., 356 S.W.2d 382.

A question relating to the construction of an indemnity contract is presented. We are to take the wording of the instrument, consider the same in the light of the surrounding circumstances, and apply the pertinent rules of construction thereto and thus settle the meaning of the contract. The issue is squarely joined in that the respondent asserts that:

"The Court of Civil Appeals properly held that the contract was so worded as to afford Respondent the

right to indemnity on the basis of the relevant jury findings and the undisputed evidence."

■ The problem is one of contract construction and not public policy, and is so treated by the parties. Only a few jurisdictions, and Texas is not one of them, hold that a contract of indemnity against the results of one's negligence is contrary to public policy in that such contracts tend to encourage careless conduct. This theory or doctrine is not regarded as being sound and has been described as being somewhat fanciful. From a public policy standpoint, an indemnity agreement against one's negligence issued by an insurance company would be as objectionable for encouraging carelessness as would an indemnity contract issued by any other form of entity or by a natural person. See, Griffiths v. Broderick, 27 Wash.2d 901, 182 P.2d 18, 175 A. L.R. 1, and annotation following in the American Law Reports. Of course, certain types of indemnity agreements may be contrary to public policy for various other reasons, Restatement of the Law of Con-

tracts, §§ 572, 575, but the contract with which we are concerned cannot be so classified. Ordinarily, however, one does not contract against the results of his own negligence. Such agreements, except for insurance contracts, must be regarded as exceptional rather than usual in the majority of business transactions. Before such indemnity contracts may be enforced it must clearly appear that the contracting parties intended that the indemnitor would be held liable for damages resulting from the negligence of the indemnitee.

Spence & Howe Construction Company is a contracting firm engaged in heavy construction, the building of docks and related work. It had been doing pile driving work for Gulf Oil Corporation for a number of years. As a usual thing, these jobs were done in pursuance of a written order from Gulf to Spence & Howe. These orders were on a purchase order form and the particular one here involved was dated November 3, 1954 and addressed to Spence & Howe. Among other provisions it contained the following clauses:

| | Price |
|---|---|
| (You agree to) "Furnish labor, supervision and equipment and drive piling for six propane tanks as per your proposal of October 27, 1954. * * * | Unit price as per your proposal dated October 27, 1954. |
| "In the performance of this contract you agree to assume liability for doing or failing to do anything that may result in death of or bodily injury to any person and loss of or damage to any property. | Autho. A-3657 — 221 Propane Storage Tanks |
| "Certificate of insurance showing expiration date 10–1–55 now in our possession, is satisfactory. By oral agreement, work under this order commenced on October 26, 1954. | F.O.B. West Port Arthur, Texas." |

The order provided that it was subject to the instructions and conditions printed on the reverse side thereof. The following stipulation was among such provisions:

"13—In case of entry by the Seller, (Spence & Howe) or of any of Seller's

agents or employees, upon the property or premises of the Purchaser, for the purpose of construction, erection, inspection or delivery under this order, the Seller agrees to provide all necessary sufficient safeguards and to take all proper precautions against the oc-

currence of accidents, injuries or damages to any persons or property, *and to be responsible for and to indemnify and save harmless the Purchaser from all loss or damage and any or all claims arising by reason of accidents, injuries or damage to any persons or property in connection with such work,* and from all fines, penalties or loss incurred by reason of the violation of any law, regulations or ordinance; and further agrees to defend at the Seller's expense, any and all suits or actions, civil or criminal arising out of such claims or matters; and further agrees to procure and carry such insurance of employees as may be required by any workmen's compensation act or other law, regulation or ordinance, which may apply in the premises." (Emphasis supplied)

Three days after the work had commenced on the propane tank installation, W. C. Cummings, a nineteen-year-old employee of Spence & Howe, was severely injured while working in the leads of the pile driving machine. The operator of the crane which was used to raise and set the piling in place abruptly lifted a piling timber and Cummings, in an effort to avoid being struck by the piling, came in contact with a cable and pully of the machine and sustained injuries to his hand. The crane was owned by Gulf and at the time of the accident was being operated by a Gulf employee. Gulf made a settlement of an action which Cummings brought against it and then sued Spence & Howe for indemnity. In the present case the jury found that such settlement was reasonable and had been made in good faith. The jury also absolved Spence & Howe of any negligence and found that the negligence of the crane operator and the use of Gulf equipment was solely responsible for Cummings' injuries. The trial court entered judgment that Gulf take nothing. This judgment was reversed by the Court of Civil Appeals which in turn rendered judgment in favor of Gulf and against Spence & Howe for the recovery of $31,000. 356 S.W.2d 382.

In Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775, this Court discussed the rule that an indemnity agreement will not protect the indemnitee against the consequence of his own negligence unless the obligation is expressed in unequivocal terms. The obvious purpose of this rule is to prevent injustice. A contracting party should be upon fair notice that under his agreement and through no fault of his own, a large and ruinous award of damages may be assessed against him solely by reason of negligence attributable to the opposite contracting party. See, Perry v. Payne, 217 Pa. 252, 66 A. 553. Texas does not, however, follow the refinement of the rule which requires that the agreement, in order to effectually embrace the negligence of the indemnitee, should expressly so state. It was stated in *Friedman* that, "It is not necessary * * * for the parties to say in so many words that they intend to protect the indemnitee against liability for negligence." The rule is that when the wording of the contract is sufficiently broad to cover the negligence of the indemnitee and the situation of the parties with reference to the subject matter of the contract is such that it can clearly be said that the parties intended that the negligence of the indemnitee should be covered by the indemnity agreement, then liability thereunder will be sustained whenever the injury asserted as a basis for indemnity is one which arose out of the operations embraced by the contract.

In *Friedman* the lease of a building for business purposes was involved. The lease provided that the "Lessee accepts said premises as suitable for the purposes for which same are leased and accepts the building and each and every appurtenance thereof, and waives defects therein and agrees to hold the Lessor harmless from all claims for any such damage," that is, damages for injuries sustained by Lessee's employees, patrons or visitors due to the build-

-ing on the premises or any appurtenances thereto being in a state of disrepair. There was no express statement that the indemnitor would indemnify the indemnitee for damages sustained by reason of the negligence of the indemnitee, yet, under the contract, it was clear that the indemnitor had accepted the premises in their then existing condition and assumed all liability that might arise because of a defect in the building or the appurtenances thereof. It was contemplated by the parties that the premises would be used for business purposes and it is reasonably clear that the lessor intended to assume any and all liability which might arise from the use of the premises, including injuries occasioned by defects in the building due to the negligence of the lessor or caused by some other factor.

It appears from the report of Houston & Texas Central Railroad Company v. Diamond Press Brick Company, 111 Tex. 18, 222 S.W. 204, 226 S.W. 140 that the brick company had prevailed upon the railroad to build a spur track for its benefit. The brick company agreed to bear the expense of keeping the spur track in good condition, although the railroad operated the trains over the spur and was under a statutory duty to maintain proper crossings. Although the brick company did not, in so many words, agree to indemnify the railroad for damages caused by the railroad's negligence, it did agree to save the railroad harmless from any and all claims for damages arising from any cause whatsoever growing out of the construction, maintenance and operation of the spur track. This Court held that the parties must have contemplated that the railroad's negligence was comprehended by the indemnity contract. The contract related to operations over a designated spur track. As the railroads operated all trains over the spur and was bound by law to maintain proper crossings, the Court reasoned that as the railroad could only be held liable for negligence or a failure to fulfill a legal duty, the "save harmless" agree-

ment would be meaningless unless it was construed to include the railroad's negligence and failure to comply with its legal duty.

In James Stewart & Co. v. Mobley, Tex. Civ.App., 282 S.W.2d 290, wr. ref., an employee of a subcontractor was injured when an elevator or hoist of the prime contractor dropped some eighteen or twenty feet. The employee sued the prime contractor and a compromise settlement was made on the basis of a suit for indemnity by the prime contractor against the subcontractor. The contract did not, in so many words, provide that the prime contractor should be indemnified against its own negligence. However, the use of the hoist was specifically covered by the agreement and the Court of Civil Appeals pointed out that the agreement provided for "indemnity from all suits—that may be brought against a contractor for any injury or death to any person or persons, or damage to property that may result from the *use* of said equipment or hoist by the subcontractor or its employees." The Court of Civil Appeals correctly held that the parties to the agreement intended that the indemnity agreement should cover any and all injuries occasioned by the use of the hoist whether due to the prime contractor's negligence or not.

One further Texas case should be here noticed. The petitioner places much emphasis upon Westinghouse Electric Corporation v. Childs-Bellows, Tex.Civ.App., 352 S.W.2d 806, wr. ref. In *Childs-Bellows* it was held that the particular injury sustained was not covered by the indemnity agreement. In result it differs from the three cases above discussed. The contract containing the indemnity agreement was executed by Childs-Bellows as the prime contractor and Westinghouse as the subcontractor. The subcontractor agreed to indemnify and save harmless the prime contractor "from and against any and all loss, claim, demand, and suit for damage, including death and personal injury, *growing out of, or incident to or resulting from the performance, or failure to perform the*

*work or the provisions of this Subcontract."* (Emphasis supplied) The subcontract related to the installation of elevators by Westinghouse in a building which was being constructed by Childs-Bellows. Two Westinghouse employees were injured by being struck by objects carelessly dropped by the employees of Childs-Bellows. Such employees of Childs-Bellows were not engaged in the performance of the work covered by the subcontract,—the installation of elevators,—but were engaged in construction work for the prime contractor. The Court of Civil Appeals said:

"In the instant case, however, in view of the provisions of the indemnity agreement, it is clear that indemnity was intended to extend only to injuries to persons growing out of or incident to or resulting from performance, or the failure to perform, on the part of Westinghouse, the work of installing the elevators. The agreement does not show an intent by the parties to indemnify Childs-Bellows for injuries to persons resulting from work which was under the exclusive jurisdiction of Childs-Bellows as general contractor. The injuries sustained by the Westinghouse employees were not injuries growing out of any work undertaken by Westinghouse but, according to the stipulations, were due solely to negligence of employees of the general contractor, Childs-Bellows, in work which in so far as the stipulations show had no connection whatever with the installation of the elevators, and work with which Westinghouse had no connection."

In speaking of *Friedman, Diamond Brick* and *Mobley,* the petitioner says that:

"The rationale of these decisions is that generally it ought not to be presumed a contracting party will take on the harsh burden of the other party's negligence unless he so expresses himself unequivocally. Nevertheless, when a specific operation is dealt with and described and one undertakes to indemnify against loss from its use, it is not too great a strain upon the presumed intention of the parties to include all occurrences from that device or instrumentality within the agreement. The matter is one of degree."

It is then urged that the injury received by Cummings did not arise from work called for by the contract. While the petitioner recognizes that the contract provided that Spence & Howe shall "furnish labor, supervision and equipment and drive piling for six propane tanks," and that Gulf's operator necessarily must have received orders and signals from the employees and agents of Spence & Howe as to the crane's operations, nevertheless, in legal effect, there were two operations going on simultaneously—one being conducted by Gulf with its crane and operator and another by Spence & Howe, consisting of setting piling in place, etc. It is urged that:

"At the time of his injury, Mr. Cummings was up on the leads, a part of the pile driving equipment furnished by Respondent. His hand was caught between portions of such equipment and mashed as the result of negligence upon the part of Respondent's operator, such operator having failed to keep a proper lookout for his safety. Unless, therefore, there was no evidence in the record to support the implied finding of the trial court that the injury did not arise from work to be performed by Petitioner, the decision of the Court of Civil Appeals is manifestly wrong."

In our opinion the contract and the operations conducted in pursuance thereof cannot be so divided as to make two operations, one conducted by Gulf and the other by Spence & Howe. Under the contract Spence & Howe agreed to "furnish labor, supervision and equipment and drive piling for six propane tanks." This was the work or operation covered by the con-

tract. It constituted but one piece of work and the fact that Spence & Howe made use of Gulf equipment and a Gulf employee operator did not alter the situation.

This case is clearly distinguishable from *Childs-Bellows* in which the actions resulting in injury,—the dropping of heavy items of material upon the Westinghouse employees,—was in no way related to the installation of elevators called for by the Westinghouse contract. In the present case, Cummings was injured as a result of an action directly connected with and growing out of the operations covered by the contract of which the indemnity agreement was a part.

If the contract be construed as covering one operation or piece of work, we think the wording of the indemnity clause clearly embraced the situation which now concerns us. While the indemnity clause appearing in the first portion of the contract wherein Spence & Howe "assume liability for doing or failing to do anything that may result in damage, injury or harm" might possibly be construed to apply only to the acts or omissions of Spence & Howe, Metropolitan Paving Co. v. Gordon Herkenhoff & Associates, 66 N.M. 41, 341 P.2d 460, the provision set forth in the instructions and conditions of the contract cannot be so construed. As above pointed out, Spence & Howe in this portion of the contract agreed "to be responsible for and to indemnify and save Gulf harmless from all loss or damage and any or all claims arising by reason of accidents, injuries or damage to any persons or property in connection with such work."

This phrase clearly means that Spence & Howe assumed liability for any and all damages growing out of the work covered by the contract,—namely the setting of piling for six propane tanks.

The clause appearing in the forepart of the contract did not operate to limit the coverage of the second indemnity clause, although it might have been redundant or even unnecessary to the contract. We cannot read clearly stated provisions out of a contract to which the parties have agreed.

The general rules relating to the construction of contracts are applicable to indemnity contracts. We agree with the statement of the Court of Civil Appeals that, "In construing contracts we must seek the intention of the parties from the language used in the contract. All of the language used is to be considered. Too, consideration may be given to the subject matter of the contract and the surrounding facts and circumstances, not for the purposes of varying or adding to the contract but in order to find out the intention with which words are used." When this rule is applied to the factual situation before us, it seems certain that Spence & Howe, as the supervising authority of the work, assumed liability for any and all accidents which might occur in connection therewith. And, this is true whether or not we consider the installation of piling for six propane tanks as a specific operation and somewhat similar to a specific device. A contract relating to a specific device such as an elevator or hoist, or a specific operation such as raising bricks or other building materials generally, present instances where an intention on the part of one contracting party to indemnify the opposite party for the results of his negligence is readily discernible. However, in construing a contract, all of its provisions must be considered in arriving at its meaning. In the Diamond Brick case, for example, whether the operation of the spur track be considered a specific device or operation or not, the result would be the same insofar as the construction of the contract is concerned for, as pointed out in the opinion, the contract would be meaningless unless it were construed to encompass the railroad's negligence in maintaining its trains over the same.

█ Indemnity contracts involving the negligence of one of the contracting parties may present troublesome problems of construction. But, as is the case of all con-

tract problems, difficulties may be avoided by the use of definite specific language stating whether or not the negligence of one of the contracting parties is embraced within the indemnity provisions. However, insofar as the agreement before us is concerned, we have no difficulty in saying that the Court of Civil Appeals was correct in holding that the negligence of Gulf was encompassed by the indemnity provisions of the contract. Ohio Oil Company v. Smith, Tex.Sup.Ct., 365 S.W.2d 621, Metropolitan Paving Co. v. Gordon Herkenhoff & Associates, 66 N.M. 41, 341 P.2d 460; Northern States Company v. A. Finkl & Sons Co., 8 Ill.App. 419, 132 N.E.2d 59; Bounougias v. Republic Steel Corporation, 7 Cir., 277 F.2d 726; Stern v. Larocca, 49 N.J.Super. 496, 140 A.2d 403.

The judgment of the Court of Civil Appeals is affirmed.