# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-03-00739-CV

---

**Edwin Howard Hooks, Jr., Appellant**

**v.**

**Deborah Kay Davis, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN203423, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Edwin Howard Hooks, Jr. appeals the trial court's summary judgment in favor of his ex-wife, Deborah Kay Davis. Davis sued Hooks for breach of their agreement incident to divorce when he failed to make monthly and lump-sum alimony payments to her. On appeal, Hooks asserts that Davis's summary-judgment evidence was neither competent nor uncontroverted and that there was a fact issue regarding whether their agreement is enforceable. We hold that the agreement is enforceable and affirm the judgment of the trial court.

### BACKGROUND

Davis filed suit for divorce against Hooks in 1999. The trial court granted the divorce in 2000 and approved their agreement incident to divorce (the Agreement), which both Hooks and

Davis signed.  The Agreement set out how the couple's property was to be divided and provided for monthly alimony for ten years and two $45,000 lump-sum payments to be paid by Hooks to Davis. The monthly alimony payments required Hooks to pay Davis $5,000 per month for 120 months, beginning on February 29, 2000.  The first $45,000 lump-sum payment, designated in the Agreement as alimony, was to be paid on June 30, 2002.  The other $45,000 lump-sum payment, designated in the Agreement's "Schedule 1" as property awarded to Davis, was to be paid on June 30, 2003.[1]

Hooks paid the monthly alimony through May 2002.  At that time, according to his deposition, he could no longer make the payments because his business was not doing well and he did not have the money to pay.  He also did not make the first $45,000 lump-sum payment due in June 2002, apparently for the same reason.  He has not paid monthly alimony since June 2002 or the two $45,000 lump-sum payments due in 2002 and 2003.  Hooks also testified that the net worth of the business he solely owns is about $300,000, that he pays himself $20,000 a month as salary, and that he was awarded a bonus in excess of $100,000 in the year 2000 and that he received a bonus of some amount in 2002 but not in 2003.

Davis filed suit for breach of contract in September.  Shortly thereafter, Davis filed a motion for summary judgment, to which she attached the Agreement and excerpts from Hooks's deposition, among other documents.  After a hearing, the trial court granted Davis's summary-judgment motion.

---

[1] The Agreement also provided that Hooks was to pay Davis $269,000 on August 1, 2000 or on the closing date of the sale of a piece of real property and $85,000 on the date of divorce; Hooks testified that he agreed to make these payments and did make both of them.

## DISCUSSION

Because the propriety of a summary judgment is a question of law, we review the trial

court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't*

*of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.).

The standards for reviewing a summary judgment are well established:  (1) the movant has the

burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as

a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary

judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable

inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon*

*v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

Hooks first asserts that Davis's summary-judgment evidence was not competent and

was controverted, precluding summary judgment in her favor.  Regarding the competency of the

evidence, Hooks asserts that Davis's summary-judgment evidence was not submitted timely because

she filed her amended motion for summary judgment on the day of the hearing and attached to the

motion the same summary-judgment evidence she had previously submitted.[2]  Specifically, Hooks

argues that it was not until this amended motion that Davis "incorporated by reference" the attached

summary-judgment evidence.  He insists that because Davis did not get leave of the court to file her

"late" summary-judgment evidence, it was not competent.  *See Benchmark Bank v. Crowder*, 919

---

[2]  The only difference in the evidence submitted with Davis's amended motion was an amended affidavit for attorney's fees, which contained only a non-substantive addition and does not affect the validity of the Agreement.

3

S.W.2d 657, 663 (Tex. 1996) (summary-judgment evidence filed two days before hearing was late and could not, therefore, be filed except with leave of court); *see also* Tex. R. Civ. P. 166a(c).

Although Hooks correctly cites the principle of law concerning late summary-judgment evidence, that rule does not apply here. Davis attached several exhibits to her original, timely summary-judgment motion, and the original motion specifically referred to this attached evidence:

> In support of this Motion, Plaintiff refers the Court to the pleadings and requests that the Court take judicial notice of all such pleadings in the file, the Agreement of the parties (Exhibit 'A'), the Affidavits of John F. Campbell as to attorney's fees and entitlement under the Agreement (Exhibit 'B and C'), the answers of Defendant to Plaintiff's Request for Admissions (Exhibit 'D') with request numbers 1-4 and 17 to be deemed as admitted, and this position testimony of the Defendant set forth in the Motion and attached also as Exhibit 'E.'

We understand Hooks to be arguing that because Davis's second amended motion for summary judgment—filed on the day of the hearing—included additional language that "all of these exhibits are incorporated herein by reference and made a part hereof for all purposes," any prior, timely summary-judgment motions purporting to incorporate their attached exhibits were not competent because they did not use the magic language of "incorporated by reference." We reject this argument. *See Boeker v. Syptak*, 916 S.W.2d 59, 62 (Tex. App.—Houston [1st Dist.] 1996, no writ) (paragraph in summary-judgment motion that expressly and specifically identified attached affidavits as being relied upon as summary-judgment evidence was sufficient to place such affidavits before court as evidence). Davis's first summary-judgment motion clearly indicated that it was

4

relying upon the attached exhibits A through E as evidentiary support. We overrule Hooks's first issue.

To prevail on her breach-of-contract claim, Davis had to prove: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from the breach. *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 82 (Tex. App.—Austin 2003, pet. denied). Hooks contests only the first requirement, claiming that there is a fact issue on whether there is a valid agreement.

Agreements incident to divorce become enforceable contracts when they are incorporated into a final decree. *Markowitz v. Markowitz*, 118 S.W.3d 82, 90 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Traylor v. Traylor*, 789 S.W.2d 701, 703 (Tex. App.—Texarkana 1990, no writ). A person may contract to support his spouse, and that obligation, to the extent it exceeds his legal duty, is a debt. *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993) (orig. proceeding). Where the duty to make support payments arises from an agreement between the parties, rather than from a divorce decree based entirely upon the power conferred by the family code, the rights and obligations of the parties are governed by the rules of contract. *See Hutchings v. Bates*, 406 S.W.2d 419, 420 (Tex. 1966); *Griffin v. Griffin*, 535 S.W.2d 42, 43-44 (Tex. Civ. App.—Austin 1976, no writ).

Hooks argues in his brief that after paying alimony for seventeen months, in June 2002 he realized that he had not signed the Agreement voluntarily. Coincidentally, this was the same month that the first payment of $45,000 came due. However, because the Agreement was approved and incorporated into the divorce decree by the trial court, it constituted part of a valid and binding

5

final judgment. *See Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979); *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex. 1979). An agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding. *Gorena*, 595 S.W.2d at 844; *McCray*, 584 S.W.2d at 281. Parties to an agreed judgment are prohibited from raising contractual defenses in an action to enforce the agreement when those defenses attack the validity of the agreement at its inception, execution, or at the time it is approved by the court in the divorce decree. *Spradley v. Hutchison*, 787 S.W.2d 214, 219-20 (Tex. App.—Fort Worth 1990, writ denied); *Giddings v. Giddings*, 701 S.W.2d 284, 289 (Tex. App.—Austin 1985, writ ref'd n.r.e.).

Nonetheless, Hook asserts that Davis's summary-judgment evidence supporting the existence of a valid agreement is controverted, precluding summary judgment. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). He cites the following "controverting" evidence: (1) a memo dated February 7, 2000 from Hooks to his former counsel, in which he mentions that the dates for the two $45,000 payments should be in October of 2002 and 2003, rather than in April of those years; (2) a letter dated March 7, 2000 from Hooks's former counsel to Davis's counsel negotiating the details of the Agreement to be signed; (3) an undated and unsigned spreadsheet indicating which assets are to go to which spouse, indicating two cash payments of $45,000 that Hooks is to make to Davis, in addition to the 120 monthly alimony payments of $5,000; (4) Hooks's former attorney's handwritten notes, dated late January 2001, in which she indicates Hooks's agreement to make two $45,000 payments to Davis, in October of 2001 and 2002; and (5) Hooks's affidavit, in which he states, "The Agreement Incident to Divorce that Plaintiff alleges I owe her money is not the same agreement I had with her." In other words, Hooks

6

asserts that the Agreement does not reflect the terms as he remembers them.[3]  However, he cites no facts supporting his conclusory statement in his affidavit that the Agreement "is not the same" as the one he had with Davis.  Conclusory statements unsupported by facts in an affidavit are insufficient to raise a genuine issue of fact to prevent the rendition of summary judgment.  *See Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).  Details of negotiations that preceded a final agreement do not undermine the validity of an agreement signed by both parties and approved by the court granting the divorce.  *See Smith v. Smith*, 794 S.W.2d 823, 827 (Tex. App.—Dallas 1990, no writ); *Gulf Oil Corp. v. Spence & Howe Constr. Co.*, 356 S.W.2d 382, 385-86 (Tex. Civ. App.—Houston 1962), *aff'd*, 365 S.W.2d 631 (Tex. 1963).  Furthermore, parties to a written contract have an obligation to read what they sign; absent actual or constructive fraud, they are not excused from the consequences attendant upon a failure to read the contract.  *G-W-L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex. 1982), *overruled on other grounds*, *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex. 1987); *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962).  Hooks has claimed no fraud, misrepresentation, or concealment.

We conclude that none of Hooks's evidence creates a fact issue as to the validity of the signed Agreement.  Hooks's argument is essentially that the dates of the two $45,000 payments set out in the Agreement are not the same dates that he remembers or that were discussed during negotiations leading to the Agreement.  His own deposition testimony indicates that he did agree to

---

[3]  He also appears to be implying that perhaps the Agreement was tampered with after he signed it; however, there is no evidence of such tampering, and he does not explicitly argue this point.

make two $45,000 payments—he simply contested the dates he remembered them being due. However, Hooks signed the Agreement; he has not asserted that his signature was forged or that he signed under duress or coercion.[4] Hooks testified that although he had been paying the monthly alimony pursuant to the Agreement, he stopped paying it and did not make the two $45,000 payments simply because he did not have the money. Hooks has not presented any evidence to create a fact issue on whether there was a valid contract. The Agreement was incorporated into the divorce decree, and Hooks is bound by its terms. *See Gorena*, 595 S.W.2d at 844. We overrule his second issue and hold that the trial court properly granted summary judgment in favor of Davis.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   July 29, 2004

_____

[4] Hooks does state in his brief's "Statement of Facts" that he "involuntarily" signed the Agreement, at the insistence of his former attorney. However, Hooks does not assign this allegation as an error or brief the issue; rather, he argues that he "did not agree" to the payments and that the Agreement does "not reflect the agreement" he had with Davis. Hooks has therefore waived any error associated with his "involuntary" signing of the Agreement. *See* Tex. R. App. P. 38.1(e), (h); *see also In re Barr*, 13 S.W.3d 525, 555 (Tex. 1998). Furthermore, Hooks has neither alleged duress or coercion in his signing the Agreement, nor has he submitted any factual evidence to support his conclusory statement. We also note that the Agreement states that each party "[e]nters into this Agreement voluntarily [and] . . . [h]as carefully read each provision of this Agreement." His suit against this former attorney was initially a part of the present cause but was severed and is still pending in Travis County district court.