**W. J. STEEGER et al., Petitioners,**

v.

**BEARD DRILLING, INC., Respondent.**

No. A–9409.

Supreme Court of Texas.

July 17, 1963.

On Rehearing Oct. 2, 1963.

Spafford, Ledbetter, Freedman, Hamlin & Gay, Dallas, for petitioners.

Baker, Botts, Shepherd & Coates, Finis E. Cowan, Houston, with above firm, for respondent.

STEAKLEY, Justice.

Petitioners, W. J. Steeger et al., as Owner, entered into a written contract with respondent, Beard Drilling, Inc., as Con-

tractor, for the drilling of a test well for oil and gas. In the course of the drilling operations petitioners instructed respondent to prepare the well as required for the running of an electrical log by Schlumberger, a third party whose specialized services were to be provided by petitioners under the contract. When the depth specified by petitioners was reached, mud was circulated for forty-five minutes, after which, and while in the process of "pulling out of the hole," the well blew out and caught fire. This suit was thereafter filed by respondent against petitioners to recover the value of respondent's equipment which was destroyed.

Petitioners filed a cross-action sounding in both tort and contract to recover from respondent the necessary and reasonable cost expended by petitioners in controlling the blowout. The trial court sustained petitioners' motion for summary judgment as to the portion of respondent's suit based on the contract. The case was tried to a jury which found that neither party was negligent. The jury also made findings of damages to petitioners caused by the blowout, upon the basis of which the trial court entered judgment for petitioners on their cross-action.

On appeal, the Court of Civil Appeals held that the trial court erred in granting petitioners' motion for summary judgment, and in entering judgment for petitioners on their cross-action. Further, that the trial court should have rendered judgment in favor of respondent on petitioners' cross-action since the jury found neither party guilty of negligence. However, the Court of Civil Appeals did not render judgment for respondent for the stated reason that there was no basis in respondent's pleadings therefor since the trial court had ordered the elimination of respondent's pleadings on the contract. So the Court of Civil Appeals reversed the judgment of the trial court and generally remanded the cause for further proceedings in accordance with the opinion of the Court. Beard Drilling, Inc. v. Steeger et al., 361 S.W.2d 888.

Petitioners filed application for writ of error asserting error by the Court of Civil Appeals only in its construction of the contract, and in upholding respondent's right of action under the contract.

The question before us is whether under the written contract of the parties, petitioners assumed the risk of, and agreed to indemnify respondent against, a loss of respondent's drilling equipment occurring during operations which were preliminary to, preparatory for, and before the actual running of, an electric log. We hold that petitioners did not.

In answering the question in the affirmative, it was the view of the Court of Civil Appeals that the terms "electrical logs" and "electric logging," as used in the contract, included not only the actual running of the electrical logs, but, in addition, the work of circulating mud and removing the drill stem preliminary thereto; and that petitioners had agreed to indemnify respondent against the loss which occurred during these preparatory operations.

The testimony of Joe Beard, president of the respondent corporation, as quoted in the opinion of the Court of Civil Appeals, was that the term "electric logging" was generally used to describe that procedure "whereby a company like Schlumberger comes out to a well, lowers certain instruments into the well, shoots electric currents through there for the purpose of conducting certain tests."

The contract between the parties is quoted in full in the opinion of the Court of Civil Appeals (361 S.W.2d 889–892), to which we refer. We will quote only the provisions of the contract which are deemed controlling.

■ It is our view that the answer to the problem rests in the delineation of obligations expressed by the parties in paragraph 2 of the contract which speaks in detail of the services, materials and equipment to be furnished by petitioners as Owner, and by respondent as Contractor. With

respect to petitioners, paragraph 2a provides:

"2. EQUIPMENT AND LABOR.

"a. FURNISHED BY OWNER. *Owner, at his expense, shall furnish* the services and materials required of him in said specifications, and in addition, all casing (both surface and production), tubing, wellhead connections, separators, flow lines, and other completion equipment installed in or upon said well and location, *and all required services and equipment of third persons for* drill stem tests, side wall cores, coring perforations, *electrical logs,* cementing (including surface and production casing and squeeze jobs), and all cement so required." *

With respect to respondent, paragraph 2b provides:

"2.

"b. FURNISHED BY CONTRACTOR: *Contractor, at his expense shall furnish* what is required of him in said specifications, and also an adequate rotary drilling rig, including blowout preventer, *and all other* machinery, tools, equipment, materials, *services, and labor necessary or proper in the performance of said work, except those to be supplied by owner as set forth above or in said specifications."*

A reasonable construction of the emphasized language in paragraphs 2a and b, above, is that petitioners obligated themselves to furnish the required services and equipment of the third person engaged for electric logs; and that the respondent obligated itself to furnish all other services and labor with respect to the electric logs which would include the process of circulating the mud and removing the drill stem. It is undisputed that preparatory services necessarily precedent to the actual electric logging operation were not a part of the services and labor to be performed by the third

person engaged by petitioners to run the electric logs; also, that the labor and services of the third person were not to commence until the well was in a position for the running of the electric log.

■ In relation to the foregoing, petitioners assumed risk and expense obligations in paragraph E of the specifications as follows:

"E. RISK: The operations enumerated in subdivisions (1) to (9) inclusive of paragraph 'D–2–b' immediately above, shall be conducted at owners risk and expense, provided however, that owner shall never be liable for contractor's negligence or want of skill or diligence, or for failure of contractor's equipment."

The operation pertinent here is enumerated in subdivision (4) of paragraph "D–2–b" as "Electric logging."

In brief, then, petitioners as Owner agreed to furnish at their expense and risk the services and equipment of the third person performing the operation of electric logging, and to indemnify respondent for any loss suffered by respondent during the performance by the third person of the electric logging operation. The parties by their contract measured the risk and expense obligation of petitioners regarding electrical logs by the labor and services of the third person engaged by petitioners to perform the operation; or, as may be otherwise expressed, the parties agreed that petitioners would indemnify respondent for any loss suffered by respondent from anything occurring during the time the equipment and personnel of the third party was running the electric log, and hence during the time the third person would be in control at the well site. The logic of the contract in this respect is self-evident. Respondent stepped aside, and relinquished control of the well, when the third person engaged by petitioners took charge. During the time the third person engaged by

---

* All emphasis added.

petitioners was in control, respondent was protected by the assumption of risk by petitioners. Thus, the crucial point at which petitioners' indemnity obligation arose was when the third person assumed control of the well for execution of the electric logging operation. The risk and expense obligation of petitioners, defined in paragraph E, coincided precisely with that which they had agreed to furnish and pay for, and for which they had agreed to be responsible.

There is further consistency in paragraph 5 of the contract wherein it was agreed that "except as otherwise provided in said specifications, all work hereunder shall be conducted *at Contractor's sole risk.*" As before noted, the electric logging exception with which we are here concerned was one of a number of exceptions enumerated in the specifications as being at the "Owner's risk and expense."

It was also agreed in paragraph 4 of the contract as follows:

"4. OWNER'S PREROGATIVES, ACCESS, AND NOTICE. The size and amount of casing (both surface and production) to be set, *and the time, place, manner and extent of all* cementing, coring, testing, *electric logging,* perforating, squeezing, and completing said well *shall be determined by owner* and conducted accordingly. Owner and his nominees shall have access to the derrick floor and premises at all times, shall be furnished complete samples and full information at the times and places directed by him, and shall be notified and afforded reasonable opportunity to be present and to observe all coring and testing."

These provisions are consistent with other parts of the contract. Petitioners having assumed the obligations of electric logging at their risk and expense, it was provided that they were to have access to the information developed by the drilling operations, together with the right to determine the enumerated matters, with re-

spect to electric logging. Paragraph 4 gave petitioners the right to determine *when* drilling would be stopped for an electric log, hence *when* the mud would be circulated and *when* the drill stem would be removed; there is no provision giving petitioners the right to determine *who* would do these things or *how* they would be done. The latter were the responsibility and prerogative of respondent under the delineation of obligations in paragraphs 2 and 5 of the contract.

It appears that the major consideration in the construction of the contract by the Court of Civil Appeals was the conclusion that the parties intended that respondent and its employees would be subject to petitioners' direction and control during the preliminary process of circulating the mud and removing the drill stem. The Court further appeared to be influenced principally by the provisions of paragraph 4 of the contract, quoted above. In our view the beginning and major emphasis in construing the contract, and in reaching the intent of the parties, should be upon paragraph 2 in which there was expressed the division of obligations and the objective intent that respondent would furnish all services except those expressly assumed by petitioners. It cannot reasonably be said that the parties contemplated that petitioners would furnish the labor and services involved in circulating the mud and withdrawing the drill stem in preparation for the actual logging operation. Respondent and its employees did not step aside at this stage as they would have done when Schlumberger took charge with its specialized equipment and personnel. We do not regard paragraph 4, when considered in the light of the other provisions of the contract, to be subject to the construction that the parties intended that control of the employees of respondent would pass to petitioners, and that respondent would step aside, upon the exercise by petitioners of their contractual rights to determine the "time, place, manner and extent" of "electric logging."

In our view, there is no ambiguity in the contract when considered in all of its provisions and resort to aids in construction is therefore unnecessary, and, indeed, not permissible. Wood Motor Co. v. Nebel, 150 Tex. 86, 238 S.W.2d 181. It is the duty of the Court to construe the contract as an entire instrument, and to consider each part with every other part so that the effect and meaning of one part on any other part may be determined. This process makes clear the intent of the parties and the extent to which they intended to be bound. Citizens National Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003. See also Spence & Howe Construction Co. v. Gulf Oil Corp., Tex., 365 S.W.2d 631, and Ohio Oil Co. v. Smith, Tex., 365 S.W.2d 621.

We sever into one cause respondent's suit against petitioners to recover the value of its destroyed equipment, as to which we reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court granting petitioners' motion for summary judgment.

We sever into another cause petitioners' suit in the form of a cross-action against respondent. As to this cause, and without expressing an opinion thereon, we affirm the judgment of the Court of Civil Appeals remanding the case to the trial court for a new trial. Affirmance of the judgment of the Court of Civil Appeals to this extent is required since no error is here asserted by petitioners against the judgment reversing and remanding the judgment of the trial court for petitioners on their cross-action.

## ON MOTIONS FOR REHEARING

In our original opinion we sustained petitioners' points of error and severed into one cause respondent's suit against petitioners based on the written contract; as to this cause we reversed the judgment of the Court of Civil Appeals and affirmed the judgment of the trial court granting petitioners' motion for summary judgment. We severed into another cause petitioners'

suit against respondent by way of a cross-action, and for the reasons stated affirmed the judgment of the Court of Civil Appeals remanding the cause to the trial court for a new trial.

On rehearing, petitioners have moved this Court to enter an order dismissing with prejudice their cross-action against respondent, and that the judgment of the trial court denying respondent any recovery on its suit against petitioners be affirmed. Respondent has filed an instrument stating that it does not oppose the motion to dismiss, but in its motion for rehearing insists that under the general remand of the case by the Court of Civil Appeals, it is entitled to another trial of its suit against petitioners based on negligence.

In its original suit against petitioners, respondent plead a cause of action based on allegations of negligence, together with the cause of action based on the contract. The latter was the subject of this appeal, with respect to which we held adversely to respondent in our original opinion. This was the severed cause in which we reversed the judgment of the Court of Civil Appeals and affirmed the judgment of the trial court. We did not include respondent's suit against petitioners based on allegations of negligence in the severed cause remanded to the trial court for a new trial. This was because of the fact, as recited in the opinion of the Court of Civil Appeals, and in our original opinion, that the case involving negligence was tried to a jury which found that petitioners were not guilty of acts of negligence proximately causing damage to respondent. It further appeared to us that respondent in its briefs recognized that its suit for negligence (as well as petitioners' defense to respondent's suit asserting negligence on the part of respondent) had been finally determined. In speaking of petitioners' defense of negligence against respondent's suit, respondent in its application for writ of error asserted that petitioners were not entitled to a second trial of their negligence defense because "the jury found against them. Where

is the justice of allowing them to do the same thing a second time?" Also, respondent in its post-submission brief recited that "the negligence issues were fully tried to the jury which found that neither party was negligent. * * * The fact findings of the jury and Court of Civil Appeals are final here, since there are no 'no evidence' points before this Court."

However, as previously mentioned, respondent in its motion for rehearing insists that it is entitled to another trial of its suit against petitioners based on negligence under the general remand of the case by the Court of Civil Appeals; and, alternatively, that we erred in not remanding the case to the Court of Civil Appeals for its determination of respondent's points of error as appellant before that Court involving its action for negligence, and which were not considered and decided by the Court of Civil Appeals.

Respondent as appellant before the Court of Civil Appeals urged thirteen points of error. Its first three points presented questions concerning the written contract between the parties which was the subject of our original opinion. Its fourth, fifth, sixth[1], seventh[1], ninth[1], tenth and eleventh points presented errors pertaining to the judgment of the trial court in favor of petitioners on their cross-action which petitioners have moved to dismiss. The twelfth and thirteenth points asserted error by the trial court in denying respondent's motion for summary judgment "in its favor on the verdict of the jury and the undisputed evidence"; and in sustaining the motion of petitioners that respondent take nothing and that petitioners recover on their cross-action. The argument under these two points was limited entirely to the contract action; no error was asserted with respect to respondent's unsuccessful suit based on negligence.

1. The Court of Civil Appeals considered and overruled respondent's sixth, seventh and ninth points of error. It seems clear that the Court regarded these points as presenting error with respect to pe-

Respondent's eighth point of error in the Court of Civil Appeals was as follows: "The trial court erred in overruling the plaintiff's motion for mistrial based on the ground of prejudice, caused by defendants eliciting before the jury evidence that plaintiff recovered on its insurance for the damage to its drilling rig." The Court of Civil Appeals did not consider this point since the whole basis of the reversal and remand of the case by the Court of Civil Appeals was its disagreement with the trial court in the construction of the contract pertaining to respondent's suit in contract.

Respondent's suit was to recover the value of its drilling rig which was destroyed by the fire resulting from the well blowout. The value of the rig was the subject of dispute between the parties. The witness O. F. Abbott was offered by respondent for the purpose of establishing the value of the rig. He testified that its market value was $120,000.00. The witness was required to produce his records pertaining to the equipment for purposes of cross-examination. Among the figures contained in the records was that of $77,410.71. The following cross-examination ensued, the questions being asked by counsel for petitioners and the answers being those of the witness Abbott:

"Q. Sir, have you brought with you the records we talked about yesterday?

"A. Yes, sir, I have. It looks more like a work file, but it is primarily copies of records. It is available for any scrutiny. I would be glad to explain any part of it.

"Q. All right. May I take a look at them for a second?

titioners' recovery against respondent on the cross-action. We concur in this construction of the points and the argument thereunder, and in their disposition.

"A. Yes, sir. It is in date order, that is the oldest record is in the back.

"Q. Starting right in here shortly after this blowout occurred, Mr. Abbott, I note here in your records a notation of certain figures and a total figure. What is that, sir?

"A. That particular page is Joe Beard's handwriting and it is an estimate on what it would cost to re-do or put that rig back in working order. That is certain items are new and some are to be repaired. Those are the main things that he needed completely.

"Q. In determining what the damage to the equipment is worth isn't it very material to make an estimate of what it would cost to repair it?

"A. I think Joe had made some inquiry to certain manufacturers toward what the material would cost to repair it.

"Q. Sir, I don't suppose my question was clear, but if you have got some damaged equipment sitting here at a particular point, and you are trying to figure out what the damaged equipment is worth, isn't it important to find out what the damaged equipment is worth to find out about how much it would take to repair it and get it back in good condition?

"A. I can't give you a direct answer except this, if there was a swivel manufactured by Brewster Company and they would take it back in their plant and repair it and guarantee it as good as new for X dollars it would be to me as vendor, as seller, no question what the swivel was worth. It is as good as new after they repair it.

"Q. Isn't it true that what Mr. Beard thought that it would take to repair this rig and put it back in good condition, according to this notation we are talking about, is $77,410.00?

"A. Well, that was the amount of the insurance check we received. Here was one estimate here, the next day after more figures was run checking with manufacturers of what was available. This is my handwriting, it jumps up to $72,000.00. That doesn't take into consideration a lot of labor, welding and many unforseen things that cannot be entirely estimated at the time to put a rig together."

The foregoing reveals that the witness Abbott volunteered the information about insurance in an answer which was not responsive to the question propounded. The matter to which the questions were directed were proper subjects for cross-examination. There is no evidence that the particular notation in the file produced by the witness Abbott for use by counsel for petitioners in cross-examination was identified in the file as the amount of insurance paid respondent for the loss of the rig. We find no error in the action of the trial court in overruling respondent's motion for mistrial filed after the evidence was closed, and based on the foregoing. Cf. Finck Cigar Co. v. Campbell, 134 Tex. 250, 133 S.W.2d 759, 761; Texas Textile Mills v. Gregory, 142 Tex. 308, 177 S.W.2d 938, 940.

Respondent's motion for rehearing is overruled. On the Court's own motion the judgment rendered and entered herein on July 17, 1963, is set aside, and judgment is now rendered as follows:

The judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause for retrial is reversed. Insofar as the trial court's judgment denies respondent a recovery against petitioners, it is affirmed. Insofar as the

trial court's judgment awards petitioners a recovery of $43,230.88 against respondent on their cross-action, it is reversed and the cross-action is dismissed with prejudice.

All costs are apportioned two-thirds to be paid by respondent and one-third by petitioners.