# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00711-CV

**Rita Murdock, Appellant**

**v.**

**Trisun Healthcare, LLC d/b/a Park Place Health Center, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
## NO. D-1-GN-07-003108, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this case, we must decide whether appellee Trisun Healthcare, LLC d/b/a Park Place Health Center ("Trisun"), the defendant in the underlying proceeding, may compel its employee appellant Rita Murdock ("Murdock"), plaintiff below, into arbitration based: (1) solely on an acknowledgment of arbitration agreement form signed by Murdock without evidence of the contents of the arbitration agreement; or in the alternative, (2) on an arbitration agreement between Murdock and her former employer PM Texas Leasing Company, LLC ("PM Leasing")—an alleged affiliate of Trisun. The trial court found there was a binding arbitration agreement between Murdock and Trisun and that Trisun was a party to the arbitration agreement. We reverse, concluding that Trisun failed to meet its burden of proving a valid arbitration agreement covering the claims at issue.

## BACKGROUND

On April 21, 2003, PM Leasing hired Murdock to work as a nursing assistant at Park Place Care Center located in Georgetown, Texas. PM Leasing employed all nonprofessional staff employees for the facility, and another entity, Trisun,[1] employed all professional and licensed staff. As a condition of her employment, Murdock signed a binding arbitration agreement with PM Leasing ("PM Leasing Agreement").

Prior to an alleged workplace injury occurring on September 28, 2005, the parties agree Murdock became a Trisun employee—although the exact date of her employment is not revealed by the record. On August 17, 2005, approximately six weeks prior to her injury, Murdock attended a meeting at which Trisun informed its employees that it had elected not to purchase workers' compensation insurance and was instead implementing the Trisun Healthcare Associate Injury Protection Plan ("Plan"). Murdock signed an acknowledgment form ("Acknowledgment Form") acknowledging she attended the meeting and received personal copies of a summary plan description book, highlights brochure, and arbitration agreement. Although the Acknowledgment Form notes Murdock's acceptance of the Plan's arbitration agreement, the documents Murdock acknowledges receiving at the announcement meeting—including the arbitration agreement, summary plan description book, and highlights brochure—are not included in the record, and the Acknowledgment Form itself does not summarize or provide the terms of the Plan's arbitration agreement, reference the prior PM Leasing Agreement, or provide the effective date for the Plan.

---

[1] Trisun was formerly known as PM Texas Management Company, LLC.

On September 18, 2007, Murdock brought suit against Trisun for her workplace injuries alleging negligence and vicarious liability for the negligence of Trisun employees. Trisun filed a motion to compel arbitration with the trial court alleging it was entitled to enforce the PM Leasing Agreement as a party or third-party beneficiary because it was an affiliate of PM Leasing. Trisun also noted that it had presented Murdock with the Plan's arbitration agreement at the announcement meeting and attached the Acknowledgment Form to its motion to compel. Trisun, however, conceded that Murdock had not signed the arbitration agreement and provided no evidence of the agreement's contents.

At the hearing on the motion to compel, neither party presented evidence nor requested an evidentiary hearing. The trial court granted Trisun's motion to compel, finding that the "arbitration agreement" between Murdock and Trisun was "a binding agreement to arbitrate" and that Trisun was "a party to the arbitration agreement." Murdock appeals from the trial court's judgment confirming the arbitration award. On appeal, Murdock argues: (1) Trisun failed to prove the existence of a direct arbitration agreement between Murdock and Trisun covering the claims at issue, and (2) Trisun cannot enforce the PM Leasing Agreement as a party or third-party beneficiary. We agree.

**STANDARD OF REVIEW**

The trial court's order granting Trisun's motion to compel arbitration does not specify whether the trial court based its ruling on the PM Leasing Agreement or the Plan's arbitration agreement referenced in the Acknowledgment Form. Whether a valid and enforceable arbitration agreement exists between Murdock and Trisun is a legal question subject to de novo review.

3

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). "We will affirm the trial-court judgment if it is proper on any basis supported by evidence." *Ely v. Briley*, 959 S.W.2d 723, 726 (Tex. App.—Austin 1998, no pet.). Because Trisun attached both the Acknowledgment Form and the PM Leasing Agreement to its motion to compel, we will review both to determine whether either alleged arbitration agreement supports the judgment.

Under the Federal Arbitration Act (FAA),[2] a party seeking to compel arbitration must establish (1) there is a valid arbitration agreement, and (2) the claims in dispute fall within the agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). A motion to compel arbitration is similar to a motion for partial summary judgment and subject to the same evidentiary standards. *In re Jebbia*, 26 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *see also Brozo v. Shearson Lehman Hutton, Inc.*, 865 S.W.2d 509, 511 (Tex. App.—Corpus Christi 1993, no writ) ("Our task, then, is to construe all evidence, reasonable inferences, and doubt against the judgment of the trial court, which had construed every reasonable presumption in favor of the arbitration award."). To compel arbitration, the trial court must first determine as a matter of law that the parties have agreed to arbitrate. *Jebbia*, 26 S.W.3d at 756–57 (citing *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992)).

The burden of establishing the existence of an arbitration agreement is generally evidentiary. *See*, *e.g.*, *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding) ("The party seeking arbitration has the initial burden to present evidence of an

---

[2] Although Murdock opposes arbitration generally, she does not contest application of the Federal Arbitration Act.

4

arbitration agreement."). The party moving to compel arbitration "must present complete summary proof of his case in chief" proving the existence of an arbitration agreement covering the claims at issue. *Jebbia*, 26 S.W.3d at 757. If the movant's summary proof "intrinsically raises issues about the procedural enforceability of the agreement, the movant's summary proof should include any evidence that resolves those issues without creating an issue of material fact." *Id*.; *see also Weekley Homes, Inc. v. Jennings*, 936 S.W.2d 16, 18 (Tex. App.—San Antonio 1996, writ denied). No presumption of arbitrability arises until after the court has found there is an enforceable arbitration agreement. *Jebbia*, 26 S.W.3d at 757; *J.M. Davison, Inc.*, 128 S.W.3d at 227. Instead, we apply state contract law principles to determine whether a valid arbitration agreement exists. *J.M. Davison, Inc.*, 128 S.W.3d at 227.

If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement. *Id.* If the movant has proven there is an arbitration agreement as a matter of law, a presumption arises that all disputed issues between the parties must be arbitrated. *Jebbia*, 26 S.W.3d at 758. But, if the party alleging an arbitration agreement cannot prove as a matter of law that an arbitration agreement exists, "it must seek an evidentiary hearing to compel arbitration." *Id*.; *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 211 (Tex. App.—El Paso 2004, orig. proceeding).

## DISCUSSION

**A.**  **Does the Acknowledgment Form alone establish the existence of a valid arbitration agreement between Murdock and Trisun covering the claims at issue?**

To be entitled to compel arbitration under the FAA, Trisun had the initial burden of establishing as a matter of law the existence of a valid arbitration agreement. *In re FirstMerit Bank,*

5

*N.A.*, 52 S.W.3d 749, 753 (Tex. 2001); *Jebbia*, 26 S.W.3d at 757. For an employer—like Trisun—to establish a valid arbitration agreement, it must prove that its employee: (1) received notice of the employer's arbitration policy and (2) accepted it. *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006). In order to establish notice, an employer "must prove that he unequivocally notified the employee of definite changes in employment terms." *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 299 (Tex. 1986). An employee has notice of an arbitration agreement if she has knowledge of both the terms of the policy and the certainty of their imposition. *Id.* When determining whether an employee received notice of an arbitration agreement, we are to consider all communications between the employer and employee. *Dallas Peterbilt*, *Ltd.*, 196 S.W.3d at 162. If an employer proves that it has unequivocally notified the employee of the terms of the arbitration policy, the employee's continuing employment will constitute acceptance of the terms as a matter of law. *In re Halliburton*, 80 S.W.3d 566, 568 (Tex. 2002).

Based on the record before us, we cannot conclude that Trisun unequivocally proved as a matter of law that it provided Murdock with notice of the terms of the Plan's arbitration agreement and the certainty of their imposition. Because Trisun did not attach the Plan's arbitration agreement to its motion to compel, it had the burden of otherwise establishing that it provided Murdock with notice of the terms of the agreement. Trisun argues the Acknowledgment Form alone establishes a valid arbitration agreement between the parties covering the claims at issue. While we recognize that an acknowledgment form may incorporate the terms of a referenced arbitration agreement, the arbitration agreement referenced in the Acknowledgment Form is not in the record, and as such, Trisun cannot rely on it to establish notice. Further, the Acknowledgment Form does

6

not reference or acknowledge the prior PM Leasing Agreement.[3] As such, despite Trisun's assertions to the contrary, the terms of the PM Leasing Agreement are not incorporated into the Acknowledgment Form and cannot establish notice.[4]

We further recognize that a summary of an arbitration policy may convey notice to an employee when the policy's material elements are included in the summary. *See, e.g, Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 418 (Tex. App.—Dallas 2011, pet. denied) ("Notice of an agreement to arbitrate can be effectively conveyed to an employee by a document that only summarizes a Dispute Resolution Problem, it is not necessary that the employee receive the complete policy."). But the Acknowledgment Form does not provide a summary of the material elements of the policy. Indeed, the Acknowledgment Form does not notify Murdock of any of the terms of the Plan's arbitration agreement. Blatantly absent from the Acknowledgment Form is any indication that arbitration is the exclusive method for resolving disputes, notice as to what claims are covered by the agreement, or an effective date for the Plan. *Cf. In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006) (acknowledgment of arbitration agreement form provided sufficient notice when "acknowledgment form briefly explained Dillard's arbitration policy, stated an effective

---

[3] Trisun attached to its motion to compel an affidavit from a Trisun employee alleging Trisun did not require Murdock to sign the Plan's arbitration agreement because it was "substantially similar" to the PM Leasing Agreement. Without further evidence specifying which terms in the policies were identical or substantially similar, Trisun cannot rely on this general statement to establish the terms of the Plan's arbitration agreement.

[4] Throughout its brief, Trisun mistakenly conflates the issues presented by the Plan's arbitration agreement referenced in the Acknowledgment Form and the PM Leasing Agreement. The Acknowledgment Form does not in any way reference or acknowledge the PM Leasing Agreement Murdock entered into with her prior employer. The issue of whether Trisun established a direct arbitration agreement with Murdock based on the Plan's arbitration agreement is distinct and wholly separate from the issue of whether Trisun can enforce the PM Leasing Agreement.

7

date of August 1, 2000, and conspicuously warned that employees were deemed to accept the policy by continuing their employment"); *Halliburton*, 80 S.W.3d at 568 (notice sufficient when it informed employee that binding arbitration was designated as the exclusive method for resolving all disputes, stated effective date, and informed employees they would accept arbitration provision by continuing work after specified date); *see also HSS Sys., L.L.C v. Lucan*, No. 03-10-00761-CV, 2011 WL 2297716, at *4 (Tex. App.—Austin June 9, 2011, no pet.) (mem. op.) (concluding employer's brochure did not convey sufficient notice of arbitration when it did not "clearly communicate the mandatory nature of the arbitration policy").

The absence of these material terms raises issues about the existence of a mandatory arbitration policy effective at the time of Murdock's injury covering the claims at issue. Trisun's summary proof does not include any evidence that resolves those issues, such as evidence of communications occurring at the Plan announcement meeting notifying Murdock of the material terms of the Plan or other proof of the contents of the referenced summary plan description book, highlights brochure, or arbitration agreement. Trisun failed to establish notice as a matter of law and did not request an evidentiary hearing. *See Bunzl USA, Inc.*, 155 S.W.3d at 211 ("If [the movant] found itself unable to establish, as a matter of law, that the parties intended to be bound regardless of whether the contract was signed, it should have requested an evidentiary hearing."). As such, the record was insufficient to compel arbitration based on the Acknowledgment Form.

Even if we were to conclude that Trisun established a valid arbitration agreement, we cannot conclude it established that the Plan's arbitration agreement covered the claims at issue. *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. The Acknowledgment Form does not state what

8

claims are covered, and Trisun provided no evidence of what claims were covered by the Plan's arbitration agreement. Without such proof, we conclude—based on the Acknowledgment Form—Trisun failed to establish as a matter of law a valid arbitration agreement covering the claims at issue.[5]

**B.    Can Trisun enforce the PM Leasing Agreement as a party or third-party beneficiary?**

After concluding Trisun did not establish a direct arbitration agreement with Murdock under the Acknowledgment Form, we must now determine whether Trisun—as an alleged affiliate of Murdock's former employer—can enforce the PM Leasing Agreement.[6] It is undisputed that Murdock's claims fall within the scope of the PM Leasing Agreement. At issue is whether Trisun, a party not expressly identified in the Agreement, may compel arbitration.

The initial burden of the party moving for arbitration to establish the existence of a valid agreement includes "proving the entity seeking to enforce the arbitration agreement was a

---

[5] Trisun additionally asserts that Murdock is estopped from denying the Plan's arbitration agreement because she received benefits under the Plan. Before the acceptance of benefits can be said to trigger estoppel, it must be shown that the benefits were accepted with "knowledge of all material facts." *Frazier v. Wynn*, 472 S.W.2d 750, 753 (Tex. 1971) ("[T]here can be no ratification or estoppel from acceptance of the benefits by a person who did not have knowledge of all material facts."). Trisun did not submit evidence showing Murdock received benefits under the Plan or that the benefits were accepted with knowledge of all material facts—including the existence of a binding arbitration agreement covering the claims at issue. As such, we overrule this issue.

[6] Trisun contends we lack jurisdiction to determine this issue because it is reserved for the arbitrator under the terms of the PM Leasing Agreement. The PM Leasing Agreement provides that "[a]ny matter covered under this Agreement or concerning the legality or interpretation of this Agreement shall be heard and decided under the provisions and authority of the Federal Arbitration Act" ("FAA"). When the existence of an arbitration agreement is challenged under the FAA, it is generally a matter for the court to decide and not the arbitrator. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005). Whether a third party to an arbitration agreement, like Trisun, can compel arbitration questions the existence of a valid arbitration agreement between specific parties and is therefore a gateway matter for the court to decide. *Id; In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011).

9

party to it or had the right to enforce the agreement notwithstanding." *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836–38 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (successor employer did not meet initial burden of showing arbitration agreement it could enforce as non-signatory). In determining who may enforce an arbitration agreement, we do not resolve doubts or indulge a presumption in favor of arbitration "because the purpose of the FAA was to make arbitration agreements as enforceable as other contracts, not more so." *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738. Instead, we apply ordinary principles of state contract law to determine who may enforce an arbitration agreement under the FAA. *Id.*; *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011). Under state contract law, the question of who may enforce an agreement "is ultimately a function of the intent of the parties, as expressed in the terms of the agreement." *Rubiola*, 334 S.W.3d at 224 (quoting *Bridas S.A.P.I.C. v. Government of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003)).

After careful review of the PM Leasing Agreement and application of state contract law principles discussed below, we conclude that—under the unambiguous language of the Agreement—Trisun did not establish as a matter of law that it was entitled to enforce the PM Leasing Agreement. An arbitration agreement with one corporation—unless the parties expressly intend otherwise—is generally not enforceable by any other corporate affiliates, and the parties to the PM Leasing Agreement, Murdock and PM Leasing, did not express an intent to include Trisun as a party or otherwise confer benefits on Trisun. As such, Trisun did not establish it was entitled to enforce the PM Leasing Agreement.

### *Is Trisun a party to the PM Leasing Agreement?*

First, we address Trisun's claim that it is entitled to compel arbitration as a party to the PM Leasing Agreement. Parties to a contract are presumed to be contracting for themselves

10

only, and an arbitration contract with one corporation is generally not enforceable by any other corporate affiliates.[7] *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) ("[A] contract with one corporation—including a contract to arbitrate disputes—is generally not a contract with any other corporate affiliates."); *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex. 2007) ("We emphasize again today that arbitration clauses do not automatically cover all corporate agents or affiliates."). Parties to an arbitration agreement may, however, expressly grant corporate affiliates the right to enforce their arbitration agreement as parties. *Rubiola*, 334 S.W.3d at 222.

With regard to the question of who may enforce the PM Leasing Agreement, Murdock and PM Leasing expressed their intent as follows:

> This Agreement to resolve claims by arbitration is mutually binding upon both me [Murdock] and PM Texas Leasing, Co., LLC and Sulik Healthcare Services Inc. (hereinafter referred to as the "Company") and any entity owned or controlled by Pete Sulik. The following contains the terms and conditions of the binding Arbitration Agreement which I agree to entirely.
>
> I agree to arbitrate and resolve any and all disputes between the Company, affiliated entities and myself. I understand that the consideration for this Agreement is my employment, or continued employment, with the Company and the different benefits that go along with employment with the Company, including the promises and commitment made in this Agreement. I understand that the purpose of this Agreement is to provide both the Company and myself a way in which claims or disputes must be resolved by binding arbitration rather than litigation.

In construing the PM Leasing Agreement, we must first determine whether it is possible to enforce the contract as written, without resort to parol evidence. *J.M. Davidson, Inc.*,

---

[7] Trisun does not argue that it is entitled to enforce the PM Leasing Agreement as a successor-in-interest to PM Leasing or submit evidence of a corporate assignment. *See Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836–37 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

11

128 S.W.3d at 229. "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *Id.* A contract is unambiguous if it can be given a definite or certain legal meaning and does not become ambiguous simply because the parties advance conflicting interpretations. *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). "Ultimately, courts must enforce contract terms as written and may not rewrite contracts or add to their language under the guise of interpretation." *Weaver v. Jamar*, 383 S.W.3d 805, 811 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

We conclude Trisun is not a party under the unambiguous language of the PM Leasing Agreement. The first paragraph of the PM Leasing Agreement defines the parties to the Agreement as: (1) Murdock, (2) PM Leasing, (3) Sulik Healthcare Services Inc., and (4) any entity owned or controlled by Pete Sulik. As Trisun does not assert or present evidence that it is an entity owned or controlled by Pete Sulik, it did not establish that it was a party. We recognize that parties to an arbitration agreement may expressly provide that certain corporate affiliates are parties to an agreement. *Rubiola*, 334 S.W.3d at 220. For example, if an agreement broadly defines the term "parties" to include "affiliates of any party to the agreement," then those designated affiliates would be entitled to compel arbitration as parties. *Id.* at 223 (holding non-signatory officers and representatives of signatory mortgage company entitled to compel arbitration when arbitration

12

agreement broadly defined "parties" to include "officers and representatives of any party"). But the PM Leasing Agreement does not provide a broad definition of "parties" sufficient to encompass Trisun or otherwise designate Trisun as a party to the Agreement.

Murdock's agreement, in the second paragraph, to arbitrate disputes against "affiliated entities" does not add additional parties to the Agreement. Rather, the second paragraph defines the scope of the Agreement among the identified parties, and the term "affiliated entities" merely refers to those affiliated entities defined in the first paragraph "as any entity owned or controlled by Pete Sulik." *See J.M. Davidson, Inc.*, 128 S.W.3d at 229 (construing contract in its entirety to determine true intention of parties); *Western Reserve Life Ins. v. Meadows*, 261 S.W.2d 554, 557 (Tex. 1953) (noting terms in contracts are given plain, ordinary, and generally accepted meaning unless contract itself shows particular definitions are used to replace that meaning). In the second paragraph, Murdock agrees to arbitrate only with those parties previously identified in the first paragraph.

Trisun, however, argues the term "affiliated entities" in the second paragraph expresses an intent by the parties to grant "any affiliated entities of PM Leasing" the right to enforce the Agreement. Trisun's argument construes the term "affiliated entities" in isolation from the rest of the Agreement. A contract must be construed in its entirety to determine the true intention of the parties. *J.M. Davidson, Inc.*, 128 S.W.3d at 229. In attempting to ascertain the meaning of the words used in a contract, it is not proper to rely only upon a single clause or paragraph. *Id.* Rather, it is the duty of the Court to construe the contract as an entire instrument and "to consider each part with every other part so that the effect and meaning of one part on any other part may be determined." *Steeger v. Beard Drilling, Inc.*, 371 S.W.2d 684, 688 (Tex. 1963). This construction "makes clear the intent of the parties and the extent to which they intended to be bound." *Id.*

13

When the PM Leasing Agreement is construed in its entirety, it is clear Murdock agreed to arbitrate with only those affiliates owned or controlled by Pete Sulik and not, as Trisun asserts, any and all affiliates. In the first paragraph, Murdock agrees to enter into a binding arbitration agreement with two named parties: PM Leasing and Sulik Healthcare Services, Inc. With regard to unnamed parties, Murdock agrees in the first paragraph to enter an agreement only with those unnamed parties "owned or controlled by Pete Sulik." Any contrary construction requiring Murdock to arbitrate with other unnamed parties that are not owned or controlled by Pete Sulik—such as Trisun—renders the parties' intent in the first paragraph nugatory. *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987) (contractual language should be given its plain meaning unless it appears that the intention of the parties would thereby be defeated); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex. 1980) (court should favor an interpretation that gives effect to all provisions of the contract so that none will be rendered meaningless and the primary purpose of the agreement and intent of the parties will be effectuated). Accordingly, the PM Leasing Agreement can only be reasonably interpreted as granting only those unnamed entities owned or controlled by Pete Sulik—not Trisun—the right to compel arbitration.

Trisun further argues that the parties did not define the term "affiliated entities" in the Agreement, and the Court should look to Chapter 74 of the Texas Civil Practice & Remedies Code ("Chapter 74") to define the term. If a disagreement about the use and meaning of language used in a contract arises, the court should consider how a reasonable person would have used and understood the language, by pondering the circumstances surrounding the contract's negotiation and by considering the purposes which the parties intended to accomplish by entering into the contract. *See Manzo v. Ford*, 731 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1987, no writ).

14

We cannot conclude that a reasonable person entering the PM Leasing Agreement would have understood the term "affiliated entities" to be defined under Chapter 74—a statute addressing medical liability in tort—when such statutory provisions were not addressed in the Agreement nor in effect at the time the contract was executed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(3) (West 2011) (statute effective Sept. 1, 2003). As such, we decline to adopt Trisun's proposed definition for "affiliated entities" and cannot conclude Trisun is a party under the Agreement. *See also David J. Sacks, P.C.*, 266 S.W.3d at 450 (only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument).

### *Is Trisun a third-party beneficiary to the PM Leasing Agreement*?

We further conclude Murdock and PM Leasing did not express an intent to grant Trisun the right to enforce the PM Leasing Agreement as a third-party beneficiary. A third-party beneficiary may enforce an arbitration agreement to which it is not a party if the parties to the contract "intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006). But parties are presumed to be contracting for themselves only, and this presumption may be overcome only if the intent to make someone a third-party beneficiary is "clearly written or evidenced in the contract." *Bridas S.A.P.I.C.*, 345 F.3d at 362; *see also South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (presumption against conferring third-party status on non-contracting parties).

There is no evidence in the PM Leasing Agreement that the parties intended to secure a direct benefit for Trisun—an entity not mentioned or otherwise contemplated in the Agreement.

15

*See MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) ("The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied."); *Petula Assocs., Ltd. v. Dolco Packaging Corp.*, 240 F.3d 499, 504 (5th Cir. 2001) (Under Texas law, courts "must enforce the unambiguous language in a contract as written, and the applicable standard is the objective intent evidenced by the language used, rather than the subjective intent of the parties."). As such, we cannot conclude that Trisun is a third-party beneficiary to the PM Leasing Agreement.

Under the unambiguous language of the PM Leasing Agreement, we conclude Trisun is not entitled to compel arbitration as a party or third-party beneficiary. Accordingly, we must enforce the contract terms as written and deny Trisun the right to compel arbitration.

## CONCLUSION

Trisun failed to establish the existence of a binding arbitration agreement with Murdock covering the claims at issue. For the foregoing reasons, we reverse the trial court's judgment confirming the arbitration award and remand for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin
  Dissenting Opinion by Justice Rose

Reversed and Remanded

Filed: May 9, 2013